IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

AARON P. STULL,
#S13367,

Plaintiff,

vs.

M. SIDDIQUI,
JOHN COE,
M. MOLDENHAUER,
and HOLLY HAWKINS,

Defendants.

Case No. 17–cv–01200–DRH

## MEMORANDUM AND ORDER

**HERNDON, District Judge:**

Plaintiff Aaron Stull, an inmate who is currently incarcerated at Menard Correctional Center ("Menard"), brings the instant civil rights action pursuant to 42 U.S.C. § 1983 against four of his medical providers at Menard. (Doc. 1). In the Complaint, Plaintiff alleges that he was denied timely and adequate medical care for his type 2 diabetes. (Doc. 1, pp. 1-17). He brings an Eighth Amendment deliberate indifference to medical needs claim against Doctor Siddiqui, Doctor Coe, Nurse Practitioner Moldenhauer, and Nurse Hawkins. (Doc. 1, pp. 15-17). Plaintiff seeks monetary damages against the defendants. (Doc. 1, p. 18).

The Complaint is subject to preliminary review under 28 U.S.C. § 1915A, which provides:

(a) **Screening** – The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a

> complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> (b) **Grounds for Dismissal** – On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint–
> (1) is frivolous, malicious, or fails to state a claim on which relief may be granted; or
> (2) seeks monetary relief from a defendant who is immune from such relief.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). Frivolousness is an objective standard that refers to a claim that any reasonable person would find meritless. *Lee v. Clinton,* 209 F.3d 1025, 1026-27 (7th Cir. 2000). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Id*. at 557. At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. *See Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009). The Complaint survives screening under this standard.

## The Complaint

During his incarceration at Menard in 2013, Plaintiff was diagnosed with type 2 diabetes after blood tests revealed elevated blood glucose levels. (Doc. 1, p. 4). In an effort to bring his blood sugar levels within normal range, *i.e.*, between 80 and 130, Plaintiff was prescribed Metformin twice daily. *Id*. His prescription was increased from 500 milligrams to 1000 milligrams after weekly "blood accu

checks" showed persistent elevated blood sugar levels. *Id*. Plaintiff routinely received 30-day supplies of this medication between 2013 and 2017. *Id*. By working closely with a member of Menard's nursing staff, Plaintiff was able to effectively manage his condition. (Doc. 1, p. 7).

In early 2017, however, his prescription for Metformin expired. (Doc. 1, p. 4). Plaintiff submitted a refill request to the prison's health care unit. *Id*. When he received no response, Plaintiff submitted additional requests to no avail. *Id*. By March 16, 2017, his blood sugar levels approached 400. (Doc. 1, p. 5). Nurse Practitioner Moldenhauer reviewed Plaintiff's lab work, but took no action to treat him. (Doc. 1, p. 15).

The nurse's notes dated April 24, 2017, indicated that Plaintiff's blood glucose levels were still elevated. (Doc. 1, p. 5). Beneath a similar notation dated May 10, 2017, Doctor Coe indicated that he would issue Plaintiff a prescription refill. (Doc. 1, pp. 5, 15). Although the doctor issued Plaintiff a refill for Metformin, he failed to refill his prescriptions for ibuprofen (800 mg) and Capzasin HP, which Plaintiff used for pain relief. (Doc. 1, pp. 5, 7).

A note in his medical records dated May 11, 2017, indicated that Plaintiff's blood glucose levels had risen to 458. (Doc. 1, pp. 5, 7). Doctor Siddiqui reviewed these lab results and added a note to "See Patient" on May 15, 2017. (Doc. 1, p. 5). Plaintiff continued requesting prescription refills and medical attention through June 2017 without receiving any response to his requests. *Id*.

By June 6, 2017, Plaintiff began suffering from vision loss. (Doc. 1, p. 5). An optometrist examined his eyes and recommended new prescription eyeglasses. *Id*. The optometrist noted that Plaintiff's "blood sugar has been up." *Id*.

On June 20, 2017, Plaintiff submitted an emergency grievance seeking medical treatment. (Doc. 1, p. 7; Doc. 1-1, pp. 12-14). He requested treatment for "serious medical problems" related to his "diagnosed diabetes." *Id*. Plaintiff explained that he had not been seen by a doctor, despite asking for an appointment to address his elevated blood sugar since March 2017. *Id*. He also indicated that he was denied prescription refills of his Metformin for eight weeks, during which time his blood sugar levels remained elevated above 200 at all times and exceeded 400 on occasion. (Doc. 1, pp. 7-8). In addition, he was denied refills of ibuprofen and Capzasin HP. *Id*. Plaintiff explained that he no longer had control over his blood sugar levels and consequently suffered from vision loss and "major pain" in his feet. *Id*. He also complained of weakness on his left side and indicated that his left knee had begun giving out. *Id*. The warden deemed the grievance to be an emergency on June 23, 2017. (Doc. 1, pp. 8, 11; Doc. 1-1, pp. 12-14). Even so, Plaintiff was not seen by a medical provider. *Id*.

On June 28, 2017, Plaintiff submitted a second emergency grievance. (Doc. 1, p. 8). Plaintiff reiterated his concerns and requested medical treatment. (Doc. 1, pp. 8-9). He also pointed out that he had not been seen by a medical provider about his diabetes in six months. (Doc. 1, pp. 9-10).

On July 3, 2017, Plaintiff met with Doctor Siddiqui for his biennial physical. (Doc. 1, pp. 10-11). The physician reviewed Plaintiff's labs from May and noted that they were abnormal. *Id.* He informed Plaintiff that his symptoms resulted from high blood glucose levels. (Doc. 1, p. 11). The doctor explained that Metformin would "manage but not reduce high blood sugar." *Id.* To help the pancreas produce more insulin and thereby reduce his blood sugar levels, the doctor recommended taking Glipizide (5 mg) twice daily. *Id.* Doctor Siddiqui prescribed the new medication. *Id.* He also informed Plaintiff that he suffered from Hepatitis C. *Id.*

The second emergency grievance was denied as moot on or around July 13, 2017. (Doc. 1, p. 12). Nurse Hawkins and Doctor Siddiqui responded to both emergency grievances by instructing Plaintiff to submit nurse sick call requests instead of emergency grievances if he wanted to be seen. (Doc. 1, pp. 15-16).

Plaintiff also filed a third grievance on July 19, 2017. (Doc. 1, pp. 12-13). In it, he complained of continued vision loss, numbness, and pain in his extremities. (Doc. 1, p. 12). He requested additional medical treatment for his diabetes, including Capzasin cream for pain. (Doc. 1, pp. 12-13). Plaintiff added that the prison eye doctor, mental health doctor, and nurses at "blood accu check" previously assured him that they would place him on the sick call list, but failed to do so. (Doc. 1, p. 13). He also requested further testing and treatment for Hepatitis C. (Doc. 1, pp. 12-13).

Plaintiff was seen again by Doctor Siddiqui on August 10, 2017. (Doc. 1, p. 13). This was one week after he completed additional bloodwork that showed improvement in his blood sugar levels. *Id.* The doctor informed Plaintiff that nothing could be done about his nerve damage, but his condition should not get any worse if he maintained normal blood glucose levels. (Doc. 1, pp. 13-14). The doctor also agreed to order more tests to confirm his diagnosis with Hepatitis C. *Id.* In early October 2017, Plaintiff was informed that he did not have Hepatitis C. (Doc. 1, p. 14).

## Discussion

To facilitate the orderly management of future proceedings in this case, and in accordance with the objectives of Federal Rules of Civil Procedure 8(e) and 10(b), the Court deems it appropriate to organize the claims in Plaintiff's *pro se* Complaint (Doc. 1) into the following two counts:

> **Count 1** - Eighth Amendment deliberate indifference to medical needs claim against Doctor Coe, Doctor Siddiqui, Nurse Practitioner Moldenhauer, and Nurse Hawkins for denying Plaintiff adequate medical treatment for his diabetes at Menard in 2017, resulting in elevated blood glucose levels, vision loss, nerve damage, and pain.
>
> **Count 2** - Eighth Amendment deliberate indifference to medical needs claim against Doctor Siddiqui for erroneously diagnosing Plaintiff with Hepatitis C in 2017.

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. The designations do not constitute an opinion regarding the merits of these claims.

## Count 1

Plaintiff's claims arise under the Eighth Amendment. U.S. CONST., amend. VIII. Prison officials violate the Eighth Amendment when they act with deliberate indifference to the serious medical needs of prisoners. *Cesal v. Moats*, 851 F.3d 714 (7th Cir. 2017) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Erickson v. Pardus*, 551 U.S. 89, 94 (2006) (*per curiam*)). See also *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015); *Berry v. Peterman*, 604 F.3d 435 (7th Cir. 2010). To state an Eighth Amendment claim based on the denial of medical care, a prisoner must show that he suffered from a sufficiently serious medical condition (*i.e.*, an objective standard) and state officials acted with deliberate indifference to his health or safety (*i.e.*, a subjective standard). *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Chapman v. Keltner*, 241 F.3d 842, 845 (7th Cir. 2001).

A medical condition is considered objectively serious if it has been diagnosed by a physician as requiring treatment or is "so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *King v. Kramer*, 680 F.3d 1013, 1018 (7th Cir. 2012). See also *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014); *Knight v. Wiseman*, 590 F.3d 458, 463 (7th Cir. 2009). Plaintiff's diabetes and related symptoms of vision loss, pain, and numbness satisfy the objective standard for screening purposes. *Cesal*, 851 F.3d at 721 (undisputed that kidney pain, vision blurriness, and numbness associated with diabetes was objectively serious); *Williams v. Liefer*, 491 F.3d 710, 716 (7th Cir.

2007) (pain is an objectively serious medical condition). However, the Court's analysis does not end here.

The Complaint must also satisfy the subjective component of this claim. To do so, the allegations must suggest that each defendant responded to Plaintiff's serious medical needs with deliberate indifference. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005) (quoting *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)). This standard is met when prison officials "know of and disregard an excessive risk to inmate health" by being "'aware of facts from which the inference could be drawn that a substantial risk of serious harm exists'" and "'draw[ing] the inference.'" *Greeno*, 414 F.3d at 653 (quoting *Farmer*, 511 U.S. at 834).

The allegations support a claim of deliberate indifference in Count 1 against Doctor Coe and Doctor Siddiqui, who allegedly ignored Plaintiff's complaints of uncontrolled blood sugar, vision loss, numbness, and pain in 2017. Failing to refill a prescription to treat an inmate's diabetes constitutes deliberate indifference. *Askew v. Davis*, 613 F. App'x 544 (7th Cir. 2015). Ignoring an inmate's complaints of pain and thereby prolonging it also satisfies the deliberate indifference standard. *Smith v. Knox Cnty. Jail*, 666 F.3d 1037, 1040 (7th Cir. 2012). The allegations suggest that both doctors were aware of Plaintiff's need for additional medical attention for his diabetes and related pain but failed to meet with him or timely provide him with prescription refills, causing medical complications that also prolonged his pain.

The allegations also support a claim against Nurse Practitioner Moldenhauer and Nurse Hawkins. Both nurses took no action upon learning of Plaintiff's condition in 2017. Nurse Practitioner Moldenhauer reviewed Plaintiff's labs, which reported high blood glucose levels on March 17, 2017. Nurse Hawkins reviewed Plaintiff's emergency grievance and deferred to the doctor's recommendation to request medical care through nurse sick call rather than through emergency grievances—all while denying Plaintiff meaningful or timely care. Although nurses may generally defer to a treating physician's judgment, they cannot stand by and do nothing when the treating physician fails to exercise any judgment at all. *Berry*, 604 F.3d at 440. In other words, the deference may not be "blind or unthinking." *Id*. at 443. At this early stage, the allegations support a claim of deliberate indifference in Count 1 against both nurses.

In summary, Count 1 survives screening and shall receive further review against all of the defendants.

**Count 2**

The Complaint states no claim against Doctor Siddiqui for erroneously diagnosing Plaintiff with Hepatitis C. Plaintiff asserts no claim to this effect. The Court has nevertheless considered whether the allegations support a claim under federal or state law.

An incorrect diagnosis, such as the one described in the Complaint, generally states no Eighth Amendment claim. *Steele v. Choi*, 82 F.3d 175, 178 (7th Cir. 1996); *Walker v. Benjamin*, 293 F.3d 1030, 1037 (7th Cir. 2002).

9

"*Estelle* requires us to distinguish between 'deliberate indifference to serious medical needs' of prisoners, on the one hand, and 'negligen[ce] in diagnosing or treating a medical condition,' on the other." *Gutierrez v. Peters*, 111 F.3d 1364, 1374 (7th Cir. 1997) (quoting *Steele*, 82 F.3d at 178 (citing *Estelle*, 429 U.S. at 106)). The Eighth Amendment "is not a vehicle for bringing claims for medical malpractice." *Snipes v. DeTella*, 95 F.3d 586, 590 (7th Cir. 1996), certiorari denied, 519 U.S. 1126.

The allegations also support no medical malpractice claim against Doctor Siddiqui for the incorrect diagnosis. Claims of negligence or medical malpractice are governed by Illinois state law. Under Illinois law, a Plaintiff "[i]n any action, whether in tort, contract or otherwise, in which the plaintiff seeks damages for injuries or death by reason of medical, hospital, or other healing art malpractice," must file an affidavit along with the complaint, declaring one of the following: 1) that the affiant has consulted and reviewed the facts of the case with a qualified health professional who has reviewed the claim and made a written report that the claim is reasonable and meritorious (and the written report must be attached to the affidavit); 2) that the affiant was unable to obtain such a consultation before the expiration of the statute of limitations, and affiant has not previously voluntarily dismissed an action based on the same claim (and in this case, the required written report shall be filed within 90 days after the filing of the complaint); or 3) that the plaintiff has made a request for records but the respondent has not complied within 60 days of receipt of the request (and in this

case the written report shall be filed within 90 days of receipt of the records). *See* 735 Ill. Comp. Stat. § 5/2-622(a) (West 2017). A separate affidavit and report shall be filed as to each defendant. *See* 735 Ill. Comp. Stat. § 5/2-622(b). Failure to file the required certificate is grounds for dismissal of the claim. *See* 735 Ill. Comp. Stat. § 5/2-622(g). Plaintiff did not file the affidavit or certificate along with his Complaint. Whether brought pursuant to the Eighth Amendment or Illinois state law, Count 2 shall be dismissed without prejudice against Doctor Siddiqui.

### Pending Motion

The Motion for Recruitment of Counsel (Doc. 3) shall be **REFERRED** to a United States Magistrate Judge for a decision.

### Disposition

**IT IS HEREBY ORDERED** that **COUNT 1** is subject to further review against Defendants **SIDDIQUI, COE, MOLDENHAUER,** and **HAWKINS**.

**IT IS ORDERED** that **COUNT 2** is **DISMISSED** without prejudice against Defendant **SIDDIQUI** for failure to state a claim upon which relief may be granted.

As to **COUNT 1**, the Clerk of Court shall prepare for the Defendants: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint (Doc. 1), and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff. If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk

within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to a **United States Magistrate Judge** for further pre-trial proceedings, including a decision on the Motion for Recruitment of Counsel (Doc. 3).

Further, this entire matter shall be **REFERRED** to a **United States Magistrate Judge** for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of

the costs, regardless of whether an application to proceed *in forma pauperis* is granted.  *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff.  Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts.  This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution.  *See* Fed. R. Civ. P. 41(b).

**IT IS SO ORDERED.**

Judge Herndon
2017.11.30
12:27:23 -06'00'

**UNITED STATES DISTRICT JUDGE**